# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

IN RE:       §
      §
    NATASHA BASCUS, KARLA      §
ROJAS AND FREEMAN SAXTON, P.C.    §
_____ §
      §
FREEMAN SAXTON, P.C., et al.      §
      §       Case No. 4:15-cv-869
v.       §       USBC Case No. 15-00403
      §       (Miscellaneous Proceeding)
UNITED STATES TRUSTEE       §

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellant's[1] appeal from the order of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, making findings of fact, conclusions of law, and imposing injunctive relief and internal controls against Appellant Freeman Saxton, P.C. ("Freeman"); a finding of contempt against Natasha Bascus; monetary fines against Freeman and Ms. Bascus; the requirement to complete certain continuing legal education in ethics against attorneys Dan Saxton and David McKeand; and referring the matter to the United States Trustee for further investigation pursuant to 11 U.S.C. §§ 526, 527 and 528.

---

[1] In the Jurisdictional Statement of Appellant's Brief, Appellant states that "Respondents Daniel Saxton, Jeff Lalo, Robert Mendoza, R.A. Support Services, Inc., Freeman Saxton, P.C., and David McKeand, appeal under 28 U.S.C. Section 158 and the Federal Rules of Bankruptcy Procedure 8001 from the judgement, order, or decree of the bankruptcy Judge 'FINDINGS OF FACT AND CONCLUSIONS OF LAW' which was filed December 15, 2015." Appellant's Brief at 6. However, the instant action was filed and docketed only by Freeman Saxton PC, represented by David McKeand, and no other persons or entities appear or are docketed. Although entitled the "Appellants Brief," it is clear from its context and from the final Conclusion stating the relief sought that Freeman Saxton PC is the sole Appellant. The Court will therefore refer to the "Appellant's Brief."

Appellant has filed 11 issues generally aiming at certain findings of fact and conclusions of law, repetitively in some respects. Nonetheless, Appellant's ultimate aim is reversal of the Bankruptcy Court's Findings of Fact, Conclusions of Law, and Orders, including the sanctions it imposed. *See* Appellant's Brief (Doc. No. 16) at 27 (Conclusion).

Appellant has requested oral argument in this matter; Appellee has not. Pursuant to Fed. R. Bankr. P. 8019(b), "[o]ral argument must be allowed in every case unless the district judge . . . examine[s] the briefs and record and determine[s] that oral argument is unnecessary because . . . (3) the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." The Court has examined the briefs and the record of this bankruptcy case and has determined that the facts and legal arguments are adequately presented therein. Oral argument will not aid the decisional process. Accordingly, Appellant's request for oral argument is **DENIED**.

After reviewing the parties' briefs,[2] the record in this case, and the applicable law, the Court **AFFIRMS** the order of the Bankruptcy Court.

# I.      BACKGROUND

The Bankruptcy Court in this instance conducted a dismissal hearing on a pending Chapter 13 bankruptcy petition, which had been filed in May 2015 without the required bankruptcy schedules. In the course of the dismissal hearing, the Bankruptcy Court learned that the debtor, Rocio Herrera, had filed the bankruptcy petition on Freeman's advice and with the assistance of a bankruptcy petition preparer, Ms. Bascus, that Freeman also arranged, all to avoid a foreclosure of Ms. Herrera's home as described further below. The Bankruptcy Court then set

---

[2] Including Appellant's Brief; Appellee's Brief (Doc. No. 19); and Appellant's Sur-Reply Brief

a Show Cause hearing as a miscellaneous matter (USBC Miscellaneous Proceeding Case No. 15-00403) arising out of the dismissal proceeding. The Bankruptcy Court's Order to Appear and Show Cause recited the basic facts of Ms. Herrera's original bankruptcy filing and its dismissal and issued the following orders:

> **IT IS THEREFORE ORDERED** that Natasha Bascus, Freeman Saxton, P.C., and Karla Rojas, who appears to be an employee of Freeman Saxton, P.C., appear on **July 8, 2015, at 1:30 p.m.** at the Plano Bankruptcy Courtroom, the Courtroom of the Honorable Brenda T. Rhoades, 660 N. Central Expressway, Third Floor, Plano, TX 75074, for a hearing on this Order to Appear and Show Cause (the "Show Cause Hearing").

> **IT IS FURTHER ORDERED** that Karla Rojas, Natasha Bascus, and Freeman Saxton, P.C. shall appear at the Show Cause Hearing and show cause why they should not be sanctioned pursuant to Federal Rule of Bankruptcy Procedure 9011, 11 U.S.C. § § 105(a) and 362, 28 U.S.C. § 1927, and/or the Court's inherent powers arising from their conduct in this case, including any violations of the automatic stay and unauthorized use of estate funds.

> **IT IS FURTHER ORDERED** that Karla Rojas, Natasha Bascus, and Freeman Saxton, P.C. shall appear at the Show Cause Hearing and show cause why this Court should not (1) sanction them for violating 11 U.S.C. §§ 110 or 362; (2) sanction them for the unauthorized use of estate funds; (3) order the disgorgement of any funds withdrawn from the debtor's bank account postpetition; (4) order the payment or repayment of all costs and fees incurred by the debtor in connection with her bankruptcy case; (5) refer these matters to the U.S. Trustee and/or the U.S. Attorney for further investigation and potential criminal prosecution, and/or (6) bar Karla Rojas, Natasha Bascus, and Freeman Saxon [*sic*], P.C., and any individual or entity working under their direction or control, from filing on behalf of themselves or anyone else a petition for relief under the Bankruptcy Code in this District without first obtaining permission to file from the Chief United States Bankruptcy Judge for the Eastern District of Texas.

*See* Order to Appear and Show Cause (USBC Doc. No. 1)[3] at 2. The Bankruptcy Court conducted a total of three hearings in this matter, between July and October 2015.

---

(Doc. No. 20) (the "Reply Brief").

[3] The Court will refer to docket entries in the miscellaneous bankruptcy case as "USBC Doc. No. XX" and docket entries in this Court as "Doc. No. XX."

On December 15, 2015, the Bankruptcy Court issued Findings of Fact, Conclusions of Law, and Orders (the "Findings of Fact") (USBC Doc. No. 21; Doc. No. 5, at 000332)[4] in the miscellaneous bankruptcy case.   It is this order from which Appellant appeals.

Appellate jurisdiction is proper in this Court pursuant to 28 U.S.C. § 158(a) and Federal Rules of Bankruptcy Procedure 8001, *et seq.  See In re Babcock & Wilcox Co.*, 425 B.R. 266, 274 (E.D. La. 2010); *Earwood v. Bodenheimer, Jones, Szwak & Winchell, L.L.P.*, 2013 WL 5234116, at *1 (W.D. La. Sept. 16, 2013).

In order to provide the fullest background in this matter, the Court will recite pertinent portions of the Bankruptcy Court's Findings of Fact, and specifically the portion entitled "Procedure before this Court":

1.  The Court initiated this proceeding after a dismissal hearing on June 17, 2015 in a bankruptcy case filed by Rocio Herrera. Ms. Herrera filed her bankruptcy case pro se.  However, at the dismissal hearing, Ms. Herrera informed the Court of the involvement of Jeffrey Freeman & Associates, P.C. d/b/a J Freeman Law Firm (collectively "Freeman") and Natasha Bascus ("Bascus").  The Court initiated this miscellaneous proceeding, and issued an order for the defendants to appear and show cause why they should not be sanctioned.

2.  On July 8, 2015, the Court held the first show cause hearing.  The Court set the matter for an evidentiary hearing to be held on August 25, 2015.

3.  On August 25, 2015, Natasha Bascus appeared by phone with her attorney. David McKeand appeared in person for Freeman.  John Vardeman appeared for the United States Trustee. Karla Rojas failed to appear, and

---

[4] The complete unsealed record on appeal has been filed in this Court at Doc. No. 5, although Appellee Trustee has also filed certain supplemental records in this Court that were filed as sealed in the Bankruptcy Court.  Although Appellee refers to the page numbers in the upper right of each document, which are automatically inserted by the CM/ECF system (e.g., PageID #385 referring to the first page of the Findings of Fact), those numbers are printed over and obscured by multiple filings in the various courts and are not easily discernable.   This Court will instead refer to the Bates numbers at the bottom right of the record pages filed at Doc. No. 5 and will identify other docket entry filings as appropriate.

was held in contempt. After the Court heard opening arguments and the direct examination of Ms. Herrera, the Court continued the matter to a final hearing on October 13, 2015. The Court ordered Natasha Bascus and her attorney, Donald Harris, to appear in person at the October 13 hearing.

4. On October 13, 2015, the Court heard Ms. Herrera's cross examination and heard all remaining witnesses and testimony.

5. Freeman appeared with designated representatives. Karla Rojas appeared. Although Donald Harris appeared as counsel for Natasha Bascus, Ms. Bascus failed to appear in person. A deposition of Ms. Bascus was admitted into evidence.

6. The United States Trustee called several witnesses, including three debtors (Rocio Herrera, Pam Green, and Brenda Rone) who had dealt with Freeman. The United States Trustee also called Sam Baker, an analyst, who testified as to previous orders and summary reports of activity concerning Ms. Bascus. Tom Powers, the Chapter 13 Trustee for Ms. Green and Ms. Rone, testified as to cases filed in the Northern District of Texas involving Freeman.

7. Freeman called the following witnesses: Karla Rojas, Ester Love, Jeff Lalo and David McKeand. All are Freeman employees.

## Findings of Fact

*Rocio Herrera*

8. Rocio Herrera resides and owns property in the State of Texas.

9. Ms. Herrera was facing foreclosure of her property. The foreclosure was scheduled for May 5, 2015.

10. Ms. Herrera received a letter from the J. Freeman Law Firm. The letter was an advertisement representing that Freeman could assist Ms. Herrera as to the foreclosure.

11. Ms. Herrera contacted Freeman by phone and spoke with a Freeman representative named Mike Matthew. Mr. Matthew is not an attorney. However, Ms. Herrera understood that she was speaking with an attorney, and Mr. Matthew did not disclose to Ms. Herrera that he was not an attorney.

12.     Freeman is located in Atlanta, Georgia. Mr. Matthew is in the Atlanta office.  Dan Saxton is the only attorney in the Atlanta office. Mr. Saxton is not licensed to practice in Texas or admitted to the Eastern District of Texas.

13.     On May 5, 2015, Freeman, by and though Mr. Matthew, advised Ms. Herrera that the foreclosure on her home could be stopped by a mortgage loan modification, which would be handled by Freeman.  The loan modification would cost a total of $4500.  Freeman then received $1500 paid by Ms. Herrera.  Later that same day, Freeman, by and through Mr. Matthew, advised Ms. Herrera to file Chapter 13 bankruptcy.  Mr. Matthew then told Ms. Herrera that a bankruptcy petition preparer would contact her to prepare the filing.

14.     Freeman never provided Ms. Herrera with a written offer from her lender for mortgage relief prior to accepting the $1500 payment on May 5, 2015.

15.     Freeman, by and through its non-lawyer employee, contacted Natasha Bascus to prepare Ms. Herrera's petition.  Ms. Bascus then contacted Ms. Herrera by phone and charged her $150 to prepare the petition.

16.     Ms. Herrera filed her Chapter 13 petition on May 5, 2015, and the Court assigned her bankruptcy case number 15-40846.  She filed the petition pro se, without any reference to Freeman or the loan modification.  In addition, Ms. Bascus failed to sign – and failed to obtain Ms. Herrera's signature on – the petition preparer notice required under § 110(b)(2)(B)(I) of the Bankruptcy Code.

17.     Freeman was aware of Ms. Herrera's Chapter 13 filing. Freeman had ongoing communications with Ms. Herrera, including text messages specifically related to the filing of the bankruptcy petition and whether Freeman could stop the foreclosure.

18.     The petition was filed as a skeletal, emergency filing and had no schedules.  Ms. Herrera did not file any of the documents required by Bankruptcy Code § 521.

19.     Freeman did not give Ms. Herrera any advice or notices about bankruptcy or the risks of being a debtor.

20.     On June 4, 2015, Freeman attempted to take an additional $1500 from Ms. Herrera's bank account. Ms. Herrera was still in Chapter 13 and protected

by the bankruptcy stay at the time.   After Ms. Herrera's daughter disputed the payment, Freeman refunded this amount to Ms. Herrera.

21.   On June 17, 2015, Ms. Herrera's bankruptcy case was dismissed for failure to file the appropriate documents.   At the dismissal hearing, the Court inquired of Ms. Herrera, discovering the involvement of Freeman and Ms. Bascus.   As a result, as previously discussed, the Court set a show cause hearing on July 8, 2015.   The parties named in the order to show cause are Freeman, Natasha Bascus and Karla Rojas.

22.   Ms. Herrera initiated a second bankruptcy case, which the Court assigned case number 15-41183, on July 1, 2015.   Ms. Herrera is represented by an experienced bankruptcy attorney, Diane Barron-Carter, in her new case.

23.   On July 3, 2015, Freeman sent Ms. Herrera a letter stating that she had failed to pay for her loan modification and that $3000 was due.   The letter further stated that Freeman would not be refunding her $1500.

24.   Freeman did not complete a loan modification for Ms. Herrera.

25.   Ms. Herrera has incurred the following costs related to her dealings with Freeman:   (1) $1500 paid on May 5th, (2) $150 paid to Ms. Bascus, (3) $4000 in attorney fees for her current Chapter 13 case, (4) $1000 in out-of-pocket business expenses.

[* * *   In ¶¶ 26 – 51, the Chief Bankruptcy Judge detailed the history of two other bankruptcy petitioners, Pamela Green and Brenda Rone.   Their encounters with Freeman and its employees were substantively similar, if differing in detail, to that of Ms. Herrera.   One significant difference in Ms. Rone's case is that when the Freeman non-lawyer employee advised her to file for bankruptcy, Ms. Rone responded that she was already in bankruptcy.   ¶ 49.   The Freeman representative, Ms. Love, then advised Ms. Rone to transfer her property by quitclaim deed to someone she trusted and then have that person file bankruptcy in order to stop the foreclosure.   *Id*.   On the advice of someone identifying himself on the phone as "Jeff Freeman," Ms. Rone transferred the property to her daughter, who then filed a Chapter 13 bankruptcy petition.   ¶¶ 50-51.   It is otherwise unnecessary to repeat verbatim each Finding of Fact recounted in ¶¶ 26-51.   * * * ]

*Freeman and Bascus – Pattern of Bad Faith*

52.   Freeman's mortgage loan modification operation is in Atlanta, Georgia.

Dan Saxton, an attorney licensed in Georgia, is the only attorney in the Atlanta office.

53.     Freeman operates under the name "J. Freeman Law Firm." It uses this name for two corporate entities: (a) Freeman Saxton P.C. and (b) Jeffrey Freeman & Associates, P.C.   Based upon the evidence, the Court finds no distinction between the entities.   The Court considers this as a single business enterprise, which the Court commonly refers to as "Freeman."

54.     Jeff Lalo is the office manager for Freeman's Atlanta, Georgia office. The Court finds that Mr. Lalo is the person in control of Freeman's loan modification operations.   Mr. Lalo testified that he is aware of the provisions and requirements of 12 C.F.R. § 1015, otherwise known as the Mortgage Assistance Relief Services Act.

55.     Freeman has engaged in a pattern of conduct whereby Freeman receives "up front" payments from its clients for mortgage loan modification services prior to completing the modification and before the mortgage lender has even made an offer to modify the mortgage.   Freeman collected "up front" fees for mortgage loan modification services from both Ms. Herrera and Ms. Green.   Freeman attempted to collect "up front" fees from Ms. Rone.

56.     Ms. Herrera, Ms. Green and Ms. Rone dealt only with Freeman's Atlanta office.   They never communicated with anyone in Texas.   Freeman, by and through its non-lawyer employees in the Atlanta office, initially offered to help through a mortgage loan modification program.

57.     Freeman's only attorney in Texas, David McKeand, testified that, prior to the hearing, he had never spoken to Ms. Herrera, Ms. Green or Ms. Rone. Even so, Mr. McKeand testified that he takes responsibility for the Texas clients.   However, there was no Texas lawyer available on a regular basis to effectively supervise the loan modification employees, who are all located in Atlanta, Georgia[.]

58.     After a brief period of time, Freeman told Ms. Herrera and Ms. Green that the loan modification would not stop the foreclosure.   Freeman did not advise Ms. Herrera or Ms. Green to seek separate counsel regarding whether bankruptcy might be an appropriate course.   Instead, Freeman advised the clients to file bankruptcy.   Freeman then recommended that the clients use a bankruptcy petition preparer to prepare the filing.

59.     In Ms. Herrera's filing, Natasha Bascus was the petition preparer.   By

representing themselves to be lawyers – and by advising Ms. Herrera to file bankruptcy – Ms. Herrera understood that Freeman was her bankruptcy lawyer.

60.     Freeman took money from Ms. Herrera, advised her to file bankruptcy, and caused a petition preparer to contact her. This was all part of the same business transaction from Freeman's point of view. The same pattern of facts is true as to Pam Green, as Freeman caused Karen Shepard to contact her.

61.     By causing a petition preparer to contact Ms. Herrera and Ms. Green, and by advising Ms. Green not to include the Freeman name in the petition, Freeman concealed its involvement with these debtors and their bankruptcy filings.

62.     Freeman, through Jeff Lalo, has used Natasha Bascus as its agent to prepare over 200 Chapter 13 bankruptcy petitions for Freeman clients across the United States. None of the cases prepared by Ms. Bascus through June 30, 2015 have ever contained any schedules. The vast majority of these cases were dismissed for failure to file information, including schedules.

63.     Freeman Saxton P.C. was formerly known as Secure Law Center P.C. In 2010, Secure Law Center P.C. and Jeff Lalo both signed a Stipulated Judgment with the United States Trustee's Office out of Savannah, Georgia. Among other things, that Judgment enjoined Jeff Lalo and Secured Law Center P.C. from "preparing of [*sic*] assisting with the preparation of documents in connection with any bankruptcy case or related proceeding in the Southern District of Georgia" (the "Injunction").

64.     Jeff Lalo was the person in control of Secured Law Center's mortgage loan modification operations. Secured Law Center, P.C. has changed names multiple times in the five years since the Injunction. Freeman Saxton, P.C. d/b/a J. Freeman Law Firm is now the name of the corporate entity for the business. However, the firm still focuses on the mortgage loan modification business under the control of Mr. Lalo.

65.     David McKeand, a principal of Freeman, incorporated Jeffrey Freeman & Associates P.C. in April 2015. The assumed name for this corporation is the J Freeman Law Firm. Jeffrey Freeman died in 2011.[5] Freeman used

_____

[5] As briefly mentioned above, the Bankruptcy Court found that when Brenda Rone challenged the advice she was given by Freeman's non-attorney employee in 2015 (to transfer her property by quitclaim to someone she trusted, who would then file bankruptcy to stop the foreclosure),

the name of a deceased attorney in the original corporate name of its business.   The assumed name "J Freeman Law Firm" does the same.

66.     The Injunction specifically states that Secured Law Center, P.C. (which is now Freeman & Saxton, P.C.) is a debt relief agency under Bankruptcy Code § 526.

67.     Freeman and Mr. Lalo both had notice and were aware of the Injunction.

68.     After the Injunction, Freeman, by and through Mr. Lalo, used Ms. Bascus as its agent to prepare 15 cases in the Southern District of Georgia.   These petitions were prepared for Freeman clients.

69.     Freeman has been sanctioned in other bankruptcy courts for taking money from debtors after the petition and without court approval.

70.     Dan Saxton has previously been sanctioned in Rhode Island for soliciting loan modification business in a state where Freeman was not licensed.

71.     Natasha Bascus has previously been sanctioned and held in contempt in other bankruptcy courts.

72.     Dan Saxton is a principal of Freeman.   In the cases discussed at trial, Mr. Saxton advised Freeman's non-attorney employees to inform its loan modification clients to file a pro se bankruptcy to be prepared by a petition preparer enlisted by Freeman.

73.     These facts, in aggregate, show a pattern of bad faith conduct by Freeman with respect to its use of bankruptcy, and its invocation of the automatic stay, simply to delay foreclosure.

Findings of Fact (Doc. No. 5, at 000333 – 000342).   The Bankruptcy Court then made certain

Conclusions of Law (Doc. No. 5, at 000342 – 000345)[6] and imposed the following injunctive

and monetary sanctions, and other remedial Orders:

---

someone identifying himself as "Jeff Freeman" joined the phone conversation and assured Ms. Rone that the proposed "plan was legal and had been done before," but that she should not inform the Chapter 13 bankruptcy trustee of the planned action.   Doc. No. 5 at 000338-000339. Appellant does not dispute this Finding of Fact.   That begs the question, if Mr. Freeman died in 2011, who identified himself as "Jeff Freeman" to Ms. Rone in 2015?
[6] Specifically including that "Freeman and Ms. Bascus are both 'Debt Relief Agencies' as

1.      Freeman's non-attorney agents, employees, representatives, affiliates, subsidiaries, successors and assigns, shall clearly notify all clients in the Eastern District of Texas that they are not lawyers.

2.      Freeman is hereby **ENJOINED** from working in concert with any bankruptcy petition preparer, as defined by Bankruptcy Code § 110(a)(1), in the conduct of its loan modification business in the Eastern District of Texas.   In this regard, Freeman is specifically **ENJOINED** from contacting any bankruptcy petition preparer on behalf of any of its loan modification clients (or potential clients), and from offering any of its clients (or potential clients) the services of any bankruptcy petition preparer in the Eastern District of Texas.

3.      Freeman, its agents, employees, representatives, affiliates, subsidiaries, successors and assigns, are hereby **ENJOINED** from providing any person with bankruptcy assistance, as defined by Bankruptcy Code §101(4A), in the Eastern District of Texas without prior permission obtained from this Court, after appropriate pleading and notice to the United States Trustee, with fourteen days' opportunity for an objection to be filed by the United States Trustee, and a hearing as directed by this Court.

4.      Freeman will implement procedures to prevent any future improper attempts to collect funds from any loan modification or other clients with pending cases under any provision of Title 11 in the Eastern District of Texas.   A report of these procedures will be submitted to the Court and to the United States Trustee for the Eastern District of Texas within 60 days from the date of entry of these Findings of Fact and Conclusions of Law.

5.      Freeman shall not change its corporate or assumed names without first notifying the United States Trustee for the Eastern District of Texas.

It is **FURTHER ORDERED** that

*Natasha Bascus*

6.      Natasha Bascus is in **CONTEMPT** for her failure to appear at the October 13, 2015 hearing.

7.      Ms. Bascus is hereby **ORDERED** to pay Ms. Herrera the sum of $2000 for violations of §110. 11 U.S.C. §§ 105(a), 110(i).   In addition, Ms.

---

defined in Bankruptcy Code § 101(12A)."   Doc. No. 5 at 000343.

Bascus is **ORDERED** to pay $1000 to the United States Trustee. 11 U.S.C §110(i)(2).

8.      Ms. Bascus is further **ORDERED** to refund Ms. Herrera's payment of $150.  Pursuant to 11 U.S.C.§110(h)(5), Ms. Bascus shall pay an additional $500 should she fail to pay this amount within 30 days after entry of this Order.

9.      Ms. Bascus is **ORDERED** to pay a fine of $200 to the United States Trustee for disposition in accordance with §110(l)(4)(A).

10.      Ms. Bascus shall be considered in contempt of this Court until proof of these payments are shown to this Court.   This contempt may be enforced by court action brought by Rocio Herrera or the United States Trustee.

11.      Ms. Bascus is **ENJOINED** from acting as a bankruptcy petition preparer or providing bankruptcy assistance to anyone residing in the Eastern District of Texas.   11 U.S.C. § 110(j)(2).

**IT IS FURTHER ORDERED** that

*Freeman - Monetary Fines*

12.      For intentional violations of the automatic stay, Freeman is **ORDERED** to pay the following to Rocio Herrera (1) $1500 for the $1500 paid on May 5, 2015, (2) $1000 for out-of-pocket business expenses, (3) $4000 for bankruptcy attorney fees – to be paid $800 to Rocio Herrera and $3200 to Diane Barron Carter, and (4) punitive damages of $2500. 11 U.S.C. §§ 105(a) and 362(k)(1).

**IT IS FURTHER ORDERED** that

*Dan Saxton and David McKeand*

13.      Based upon the record, Dan Saxton and David McKeand, within 60 days of the entry of these Findings of Fact and Conclusions of Law, shall complete 6 hours of approved CLE in *each* of the following areas (1) 12 CFR §1015 and the Mortgage Assistance Relief Services Act, and (2) Consumer Bankruptcy Ethics.   11 U.S.C. § 105(a).

It is **FURTHER ORDERED** that, unless otherwise stated, all payments due under this Order shall be paid within 30 days after entry of these Findings of Fact, Conclusions of Law, and Orders.

It is **FURTHER ORDERED** that this matter is **REFERRED** to the United States Trustee for further investigation, if necessary, and any appropriate action that may be brought against Freeman and Freeman's employees for their violations of 11 U.S.C. §§ 526, 527 and 528.

It is **SO ORDERED**.

Findings of Fact, Conclusions of Law, and Orders (Doc. No. 5, at 000345 – 000348).

On this backdrop, Appellant filed its Notice of Appeal of the Bankruptcy Court's

Findings of Fact, Conclusions of Law, and Orders.   Appellant lists its 11 issues as:

1.   Whether the [Bankruptcy] Court erred by first having an ex parte show cause hearing discussing Freeman's action, without Freeman being present at the hearing.

2.   Whether the Bankruptcy Court erred when it claimed Herrera did not receive a loan modification.

3.   Whether the [Bankruptcy C]ourt erred when it awarded legal fees to a bankruptcy firm that failed to list Freeman as a creditor when it filed Herr[e]ra's bankruptcy and that caused Freeman to be sanctioned for sending her a collection letter.

4.   Whether the [Bankruptcy] Court denied Freeman's due process by issuing findings of fact that were unsupported by evidence at trial.

5.   Whether the Bankruptcy Court erred by refusing pretrial discovery.

6.   Whether the Bankruptcy Court erred in declining to allow a jury to determine fact issues.

7.   Whether the Bankruptcy Court erred in determining Freeman is a debt relief agency.

8.   Whether the Bankruptcy Court erred by making Bankruptcy Preparers agents of Freeman.

9.   Whether the Bankruptcy Court erred by failing to have a pretrial conference.

10.     Whether the Bankruptcy Court violated Freeman's First Amendment Rights.

11.     Whether the [Bankruptcy] Court erred by the imposition of fines under [11 U.S.C. §] 526 reserved for intentional violations without proving intent.

Appellant's Brief at 6-7 (bracketed portions added).   Appellant therefore seeks:

> For the foregoing reasons, Appellant Freeman prays that this Court reverse the district [7] court's Order, correct the Findings of Facts, and remove the sanctions, or in the alternative grant a new trial with a jury to determine the fact issues and potential liability or sanction, and grant Freeman any such relief to which it may be entitled.

*Id*. at 27.

Appellee United States Trustee simply phrases the issue on appeal as "whether the bankruptcy court abused its discretion when it sanctioned Freeman in this case."   Appellee's Brief at 2.   Nonetheless, Appellee addresses each of Appellant's arguments.   Even so, Appellant does not attempt to rebut the majority of Appellee's arguments in its Reply Brief.   Instead, it simply argues that the Bankruptcy Court's Show Cause hearings constituted an adversary proceeding under Fed. R. Bankr. P. 7001, *et seq.*; that the Bankruptcy Court failed to observe the pertinent portions of the Federal Rules of Civil Procedure in the Show Cause proceeding; and that Freeman did not willfully violate the bankruptcy stay regarding payments received or demanded from Ms. Herrera.   The Court will address each argument.

## II.     STANDARD OF BANKRUPTCY APPELLATE REVIEW

This Court reviews the Bankruptcy Judge's findings of fact for clear error.   *In re IFS Financial Corp.*, 803 F.3d 195, 203 (5th Cir. 2015); *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003).   A finding of fact is clearly erroneous only if "on the entire

---

[7] This Court presumes that Appellant means the Bankruptcy Court's Order.

evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d at 701 (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992). The Court conducts a *de novo* review of the Bankruptcy Judge's conclusions of law. *Id.* Mixed questions of law and fact are reviewed *de novo*. *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).

## III.   DISCUSSION AND ANALYSIS

The Court will address Appellant's issues in the order in which they were presented in Appellant's Brief.

### A.   Whether the [Bankruptcy] Court erred by first having an ex parte show cause hearing discussing Freeman's action, without Freeman being present at the hearing.

Appellant contends that the Bankruptcy Court conducted an ex parte show cause hearing on June 17, 2015, regarding Freeman but without Freeman's presence. *See* Appellant's Brief at 8, 11. It therefore claims that the Bankruptcy Court violated Fed. R. Bankr. P. 9003, prohibiting ex parte contacts. This premise is incorrect.

The Bankruptcy Court's June 17, 2015, hearing was not a show cause hearing and did not require Freeman's presence. It was simply a dismissal hearing on Ms. Herrera's bankruptcy, which had been prepared and submitted in "skeleton" form without the required schedules. The hearing was set to hear the Chapter 13 Trustee's motion to dismiss Ms. Herrera's bankruptcy. *See generally* Trustee's Supplemental Filing (Doc. No. 9) at 000292. The hearing was properly noticed. *Id.* The proper parties to the June 17, 2015, hearing were the Chapter 13 Trustee and Ms. Herrera.

Of import to this appeal, it was during this dismissal hearing that the Bankruptcy Court learned for the first time of the process through which Ms. Herrera had come to file her bankruptcy case. Appellant Freeman asserts that it was identified during the dismissal hearing as having violated the Bankruptcy Code in various respects regarding its dealings with Ms. Herrera. Appellant's Brief at 11. Therefore, it asserts, the proceedings at the June 17, 2015, dismissal hearing "painted the Appellant in a negative light[.]" *Id*. at 12.

Freeman was not noticed to appear for this dismissal hearing because, as Appellant itself admits, it did not appear in Ms. Herrera's Chapter 13 bankruptcy. *See* Appellant's Brief at 10 (explaining that Freeman "did not do Bankruptcy work," but was only hired to prepare Ms. Herrera's loan modification). However, based on the information produced from the dismissal hearing, the Bankruptcy Court entered the first Order to Appear and Show Cause on June 25, 2015, against Freeman, establishing a related bankruptcy miscellaneous case. Three hearings were then conducted. Freeman appeared by counsel at each.

Appellant's contention that the Bankruptcy Court conducted an improper ex parte show cause hearing on June 17, 2015, in violation of Fed. R. Bankr. P. 9003, is without merit. In addition, Appellant raises this ex parte hearing argument for the first time on appeal, and did not raise it before the Bankruptcy Court. Accordingly, the Court need not consider it. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316-17 (5th Cir. 2000) ("It is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered.").

**B.** **Whether the Bankruptcy Court erred when it claimed Herrera did not receive a loan modification.**

The Bankruptcy Court Findings of Fact that Ms. Herrera did not receive a loan modification. Specifically, the Bankruptcy Court found that Freeman non-lawyer employee Mr. Matthew advised Ms. Herrera that: the foreclosure on her home could be stopped by a mortgage loan modification at a cost of $4500; Ms. Herrera made an initial payment of $1500; and, Mr. Mathew then advised Ms. Herrera to file Chapter 13 bankruptcy and that a bankruptcy petition preparer would contact her to prepare the filing. Finding of Fact No. 13 (Doc. No. 5 at 000334). However, Freeman never provided Ms. Herrera with a written offer from her lender for mortgage relief prior to accepting the $1500 payment on May 5, 2015. Finding of Fact No. 14. Ultimately, the Bankruptcy Court found that "Freeman did not complete a loan modification for Ms. Herrera." Finding of Fact No. 24 (Doc. No. 5 at 000335).

Appellant contends that this ultimate finding is wrong. However, its entire argument on this issue states:

> [Chief Bankruptcy Judge] Rhoades [*sic*] order erroneously claims that "Freeman did not complete a loan modification for Ms. Herrera.") See line 24 page 388 of the Record, Judge Rhoades Findings of Fact[.]) However, when Herrara [*sic*] was cross examined on October 13, 2015[,] she admits that her monthly mortgage payment was now $400 less each month. (See pages 145-146 transcript of the October 13 hearing.)

Appellant's Brief at 12 (bracketed material added). Appellant never addresses this claim again, including in its Reply Brief. Moreover, Appellant misstates Ms. Herrera's testimony. During the October 13, 2015, hearing, she testified on cross-examination by Mr. McKeand:[8]

Q: Well, did he say that we're going to try to modify your loan, as opposed to - - let me strike that and ask a new question.

---

[8] The Freeman Saxton principal in Texas, who is also counsel for Appellant here.

17

Did Mike Matthew tell you that we modified loans?

A.     I asked him if there was another option besides bankruptcy for me and he said, no.  He never told me that you modify loans or anything.  He never said that.

Q:     Did you, in fact, get a loan modificatoin [*sic*] recently?

A:     No.

Q:     You did not get a loan modification?

A:     No.

Q:     Okay.  Do you understand what a loan modification is?

A:     Yes.  I have one before, ten years ago.

Q:     Okay.  So ten years ago you got a loan modification?

A:     Uh-huh.

*See* Trustee's Supplemental Filing (Transcript of October 13, 2015, Hearing) (Doc. No. 8), at 15:12 – 16:3.[9]   She further testified on direct examination by Mr. Olson:[10]

Q:     Ms. Herrera, do you remember me asking - - I didn't ask you any questions this morning.  Do you remember Mr. McKeand asking you questions about the modification agreement that Freeman Saxton was handling for you?

A:     Yes.

Q.     Was it your testimony this morning that you did not get a modification agreement?

A:     No.

Q:     What was your testimony?

---

[9] For precision, the Court cites transcripts by page and line number of the transcript itself, to the extent the page number can be discerned on the record as filed.

[10] Counsel for Freeman Saxton and Ms. Rojas during the October 13, 2015, hearing.

A:     I never received anything from them.

Q:     Well, how about from your lender? Didn't you get notified that your modification had been accepted?

A:     No, never. I spoke to them last week.

Q:     And they told you your new payment is $400 less than it had been?

A:     No, they didn't tell me. I spoke to them and they accept my payment last month and I called to make a payment this month and I did it through the automatic service. And they - - when they tell me the amount I had to pay, it was like $400 less. And I was going to call them this week to find out what happened, or why. But I never signed any papers about any modification loans or anything.

Q:     Did they tell you on October the 8th that your new payment is $400 less than it had been?

A:     No, sir.

Q:     What did they tell you on October the 8th?

A:     Nothing. The lady described me how to make the payment over the phone.

Q:     And how much did you have to pay?

A:     I paid $1,530.

Q:     And wasn't that $400 less than it had been?

A:     Excuse me?

Q:     Wasn't that payment that you made with a debit card on October the 8th $400 less than your prior payments?

A:     I didn't pay with a credit card. I paid with a checking account. And, yeah, it was probably $400 less.

Q:     And you paid by phone?

A:      Yes.

*Id.* (Doc. No. 9) at 145:9 – 146:21.

Ms. Herrera testified unequivocally and repeatedly that Freeman never discussed a loan modification with her, even after she asked about an option other than bankruptcy, and that she never signed any loan modification papers.   She was familiar with those types of documents because she had executed and obtained a loan modification ten years earlier.   Appellant did not identify any evidence in the record in the Bankruptcy Court of any loan modification, including any application signed by Ms. Herrera, closing documents, or any documentation of any type consistent with a loan modification.   Instead, they rely here solely on the argument that when Ms. Herrera was cross examined on October 13, 2015, "she admits that her monthly mortgage payment was now $400 less *each month*."   Appellant's Brief at 12 (emphasis added).   She did not.   She testified that on one occasion a few days before the October 13, 2015, hearing, specifically October 8, 2015, she made a payment by phone and for an unexplained reason was charged $400 less than she had expected.   That single occurrence five months after first encountering Freeman's employee Mr. Mathew does not support an inference that her payment had been reduced by $400 "each month," and it is not reasonable to infer that her lender had unilaterally given her a loan modification, given her testimony that she had never signed any loan modification papers.

The Bankruptcy Court's Findings of Fact are not clearly erroneous on this record.   *In re Dennis*, 330 F.3d at 701.   This contention is without merit.

**C.** **Whether the [Bankruptcy C]ourt erred when it awarded legal fees to a bankruptcy firm that failed to list Freeman as a creditor when it filed Herr[e]ra's bankruptcy and that caused Freeman to be sanctioned for sending her a collection letter.**

Here, Appellant contends that the Bankruptcy Court erred in awarding legal fees to Ms. Herrera's bankruptcy counsel, Diane Barron-Carter. Ms. Barron-Carter filed Ms. Herrera's operative bankruptcy on July 1, 2015, after the Bankruptcy Court dismissed her original bankruptcy, which Appellant had engineered. *See* Bankruptcy Court Finding of Fact No. 22 (quoted above). The uncertain logic of this argument is that Ms. Barron-Carter did not list Freeman as a creditor when she filed Ms. Herrera's bankruptcy and did not provide notice of the freshly-filed bankruptcy to Freeman. Appellant's Brief at 13. Therefore, Appellant reasons, Ms. Barron-Carter was culpable for Freeman's act of sending Ms. Herrera a collection letter in violation of the automatic stay during the bona fide bankruptcy case, and which resulted in a sanction against Freeman. *Id.*

Appellant loses track of the fact that the second, bona fide, bankruptcy filing would not have been necessary except for the Freeman scheme of offering to obtain a mortgage loan modification, which was unobtainable before foreclosure. It then recommended that Ms. Herrera file Chapter 13 bankruptcy and provided a bankruptcy petition preparer who failed in most regards to complete an effective filing. That is, she filed a "skeleton" petition that lacked the required schedules, was not properly signed, and did not execute the notice required under 11 U.S.C. § 110(b)(2)(B)(I). Ms. Herrera's bankruptcy was therefore dismissed shortly thereafter due to this inadequate and botched filing, which was done on Freeman's recommendation. All the while, Freeman had taken a payment (and was pursuing additional payments) from Ms.

Herrera for its work under cover of providing a mortgage loan modification that never transpired. All of that necessitated Ms. Herrera's second, bona fide, bankruptcy filing with the assistance of bankruptcy counsel Ms. Barron-Carter. But for the Freeman-engineered scheme, the second bankruptcy and its costs would not have been necessary at all.

Regarding Appellant's contention that Ms. Barron-Carter "caused Freeman to be sanctioned for sending [Ms. Herrera] a collection letter," the Court addresses that point in Section III.D, below.

Under these circumstances, the Court finds that the Bankruptcy Court was justified in awarding attorney's fees to Ms. Barron-Carter.

**D.  Whether the [Bankruptcy] Court denied Freeman's due process by issuing findings of fact that were unsupported by evidence at trial.**

Appellant opens this claim by reciting in full Fed. R. Civ. P. 52, "Findings and Conclusions by the Court; Judgment on Partial Findings." *See* Appellant's Brief at 13-14. However, Appellant does not explain the applicability of the various facets of this Rule. At most, Appellant apparently intends to draw the Court's attention to subparagraph (a)(6) by highlighting it in bold. The subparagraph states:

> Setting Aside the Findings. Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

Appellant's Brief at 14 (quoting, *inter alia*, Fed. R. Civ. P. 52(a)(6)). Appellant's argument then consists solely of:

> Judge Rhoades ruled that, "Freeman intentionally violated the stay imposed by 11 U.S.C. sec. 362 by 1 failing to return her $1500 paid on May 5, 2015, 2. Attempting to take money on June 4th, knowing that she was in

22

> bankruptcy, and 3. attempting to collect money by letter dated July 3, 2015. (See page 11 paragraph 1, Judge Rhoades order dated December 12, 2015 also shown as Appellants record page 395.) The facts show that $1500 was paid to Freeman, prior to any Bankruptcy, no money was taken on June 4th, this was not Herrara's bank account, she lied to the court, and the "collection letter" was sent because Herrara, nor her lawyer had listed Freeman as a creditor and failed to inform Freeman about the second Bankruptcy she filed.

*Id*. (as in original).[11] Appellant reprises this argument in its Reply Brief.

As to Ms. Herrera's $1500 payment to Freeman, the fact that the "$1500 was paid to Freeman, prior to any Bankruptcy . . ." is immaterial. Freeman was sanctioned for violating the automatic bankruptcy stay under 11 U.S.C. § 362. In this case, the violation was because Freeman refused to return the $1500 after it was collected.

"[M]oney that constitutes the prepayment of a fee belongs to the client until the services are rendered and must be held in a trust account." *Cluck v. Comm'n for Lawyer Discipline*, 214 S.W.3d 736, 740 (Tex. App. 2007) (citing Tex. Disciplinary R. Prof'l Conduct 1.14 cmt. 2). *See also In re Prudhomme*, 43 F.3d 1000, 1004 (5th Cir. 1995) ("If a debtor retains an equitable interest in an unearned prepetition retainer, the unearned portion becomes property of the estate upon the filing of the petition for bankruptcy," citing 11 U.S.C. § 541(a)(1)). Here, the services – namely, obtaining a loan modification – were never rendered. Instead, at Freeman's recommendation, the bankruptcy was filed almost immediately after M. Herrera paid the $1500, the same day. The Bankruptcy Court properly sanctioned Freeman for refusing to return Ms. Herrera's $1500.

Similarly, Freeman claims that "no money was taken on June 4th" from Ms. Herrera's bank account. However, the Bankruptcy Court's sanction was for Freeman's *attempt* to

---

[11] These are actually Conclusions of Law by the Bankruptcy Court. (Doc. No. 5 at 000342.)

knowingly withdraw funds from Ms. Herrera's bank account while she was still protected by the automatic stay from her first bankruptcy – which Freeman had caused to be filed by its recommendation, even if it did not conduct the actual filing itself. Whether funds were *actually* withdrawn is immaterial:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –
>
> * * *
>
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> * * *
>
> > (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

*See* 11 U.S.C. § 362(a)(3), (6). Accordingly, Freeman's simple *act* attempting to obtain or collect funds from Ms. Herrera's account constituted a violation of the automatic stay, susceptible to sanction. "Section 362(a)(3) implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor." *In re HSM Kennewick, L.P.*, 347 B.R. 569, 571 (N.D. Tex. 2006) (citing *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1273 (5th Cir. 1985)). Moreover, "Section 362(a)(6) of the Bankruptcy Code provides that a petition filed under chapter 13 operates as an automatic stay of 'any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.'" *In re Brashears*, 993 F.2d 1543, 1993 WL 185739, at *3 (5th Cir. May 19, 1993) (quoting 11 U.S.C. § 362(a)(6)). This is particularly true here, given that Ms. Herrera

had filed for bankruptcy at Appellant Freeman's recommendation and with the assistance of a bankruptcy petition preparer that Freeman arranged, before Freeman attempted to recover its (barely) pre-petition claim against her.

Appellant also contends that the bank account it attempted to take money from was not Ms. Herrera's and that "she lied to the court." Appellant's Brief at 14. However, Appellant offers nothing whatsoever in support of its latter contention and there is nothing at all in the record to support such a claim. Instead, Ms. Herrera testified during the Show Cause proceedings:

Q:    What is Exhibit 5-A?

A:    It's a statement of my bank.

Q:    Is it your bank statement?

A:    Uh-huh.

Q:    And it's got the name of Tonya Ramirez at the top.

A:    Yes.

Q:    Who is that?

A:    It's a joint account with my daughter.

Q:    Okay.   But it's your money?

A:    Yes.

Q:    Okay.

MR. MCKEAND:     We object to this document, as well, Your Honor. Clearly it is Tonya Ramirez' bank account.   It's not this lady's bank account.

THE WITNESS:     My name is on the account, too.

THE COURT:          Objection is overruled.

* * *

Q:      Is there an entry on June the 4th?

A:      Yes.

Q:      For $1,500?

A:      Yes.

MR. HARRIS:          Objection; leading.

MR. MCKEAND:      Your Honor, he's - - really, he's coaching the witness.   And I'm going to ask that you admonish him.

THE COURT:          Objection is sustained.

Q:      Ms. Herrera, what's the relevance of page 7 of the bank statement?

A:      J. Freeman Law withdraw money from my account.   And the reason that I used this account together with my daughter, it's because he asked me to have an account that he could use to withdraw money from the account monthly until I finish making the payments.   So they took the money out of the account.   And that's why the account has my name on my daughter's account.   At the moment when I talked to Michael, to Mike, my personal account with me and that's the reason I gave him this account because he was demanding an account number in order for him to help me with the bankruptcy.

MR. MCKEAND:      Your Honor, we object to the testimony referencing the other person's bank account as hearsay.   And Ms. Herrera, she's not even listed on the account, yet she's testifying as to what and where these funds went.

THE COURT:          Objection is overruled.

*See* Trustee's Supplemental Filing (Transcript of August 25, 2015, Hearing) (Doc. No. 8), at

34:17 – 36:15.   Accordingly, Ms. Herrera testified that she and her daughter had a joint account,

from which Freeman attempted to withdraw $1500 on June 4, 2015; that it was her money in the account; and that she had set up that particular account and given the account number to Freeman's employee Michael or Mike to use for the purpose of withdrawing monthly payments on her account, all of which would have been after she had filed bankruptcy and the automatic stay was in place. Appellant Freeman has offered nothing at all to refute any of this testimony except to claim in unsupported argument that Ms. Herrera "lied." The Court finds no error in the Bankruptcy Court's ruling on this point.

Finally, Appellant contends that the July 3, 2015, collection letter it sent to Ms. Herrera was only sent because Freeman was not listed as a creditor on Ms. Herrera's subsequent bankruptcy, filed by her bona fide bankruptcy counsel, Ms. Barron-Carter. Therefore, Freeman argues, it was unaware of the second bankruptcy and should not have been held accountable for a violation of the automatic stay.

As Appellee points out, however, Appellant adduced no testimony in any of the hearings, including from its own employees, that it was unaware of the second bankruptcy and that it would not have sent a collection letter if it had been aware. Accordingly, there is no foundation and no support for its claim. Moreover, it is undisputed that the July 3, 2015, collection letter stated that Freeman refused to refund the original $1500 it received from Ms. Herrera. *See* Finding of Fact No. 23, quoted above. The Court has already determined that Appellant's refusal to refund constituted a violation of the automatic stay in the first instance.

The Court finds no error in the Bankruptcy Court's Conclusions of Law. This contention is without merit.

**E.** **Whether the Bankruptcy Court erred by refusing pretrial discovery.**

Next, Appellant contends that the Bankruptcy Court "ignored Federal Rule 26" because allegedly there were no pretrial disclosures; exhibits and witness lists were disclosed the day of trial; there was no notice of the trial and no time to review exhibits or depose witnesses. Appellant's Brief at 14.

Fed. R. Civ. P. 26 is only made applicable to adversary actions in bankruptcy cases, under Fed. R. Bankr. P. 7026. The Bankruptcy Court did not initiate the underlying bankruptcy proceeding as an adversary action, but as a miscellaneous action for Appellant (and the other parties ordered to appear) to show cause why it should not be sanctioned. Appellee asserts that the proceeding was simply a bankruptcy contested matter initiated by the Bankruptcy Court in its Order to Appear and Show Cause, and not an adversary action. Appellant argues to the contrary, that the Bankruptcy Court's miscellaneous proceeding was in fact an adversary action. Appellant's Brief at 13-14. While Appellant cites nothing to support this claim in its main brief, it cites Fed. R. Bankr. P. 7001 in its Reply Brief to assert that the relief the Bankruptcy Court granted made the proceeding an adversary action. *See* Appellant's Reply Brief at 2 (asserting an adversary action existed because the proceeding was intended "to recover money or property" and because it was "to obtain an injunction or other equitable relief," emphasizing Fed. R. Bankr. P. 7001(1) and (7)).

Appellant ignores that the relief imposed by the Bankruptcy Court was in the form of monetary and injunctive sanctions for violations of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, but not "to recover money or property" or "to obtain an injunction or other equitable relief" in aid of the bankruptcy itself. The Bankruptcy Court has authority under

various statutory and federal rule structures to impose sanctions. *See* Fed. R. Bankr. P. 9011; 28 U.S.C. § 1927; 11 U.S.C. §§ 105; 110(a), (h), (i), (j), (l); and 362(k)(1). Additionally, "a federal court may ignore these provisions and exercise inherent power to sanction bad-faith misconduct 'even if procedural rules exist which sanction the same conduct.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 62-63 (1991).

Moreover, even if an adversary action might have been more appropriate under these circumstances, Appellant was nonetheless afforded ample notice of the issues to be reviewed during the Show Cause Hearing; had every opportunity to conduct discovery, including depositions, while the Bankruptcy Court continued the Show Cause Hearing twice for that very purpose;[12] had full and unencumbered ability to examine and cross-examine witnesses called by both sides during the Show Cause Hearings; and had its arguments heard in full by the Bankruptcy Court.

Under these circumstances, even if an adversary action might have been more appropriate than proceeding as a contested matter, any error was harmless. *In re Krueger*, 812 F.3d 365, 369 (5th Cir. 2016) (rather than proceeding on an objection to a discharge under 11 U.S.C. § 727(a), which ordinarily requires an adversary action under Fed. R. Bankr. P. 7001(4), the

---

[12] As the Court has discussed above, the Bankruptcy Court's Order to Appear and Show Cause issued on June 25, 2015, setting an initial hearing on July 8, 2015. *See* USBC Doc. No. 1. The Bankruptcy Court then continued the hearing twice, ultimately concluding the hearing on October 13, 2015, four months later, affording the parties – particularly Appellant – opportunity to conduct discovery and depositions and otherwise prepare their arguments. During the August 25, 2015, hearing, the Chief Bankruptcy Judge stated, "I'm going to continue this to 10/13 at 9:30 a.m. We're going to set aside the day, the full day, but only the day. So you all are to confer before you leave about organizing a trial on that date. I think that now you're going to have over a month to prepare, right?" Trustee's Supplemental Filing (Doc. No. 8) at 45:14-19. The Bankruptcy Court's Findings of Fact, Conclusions of Law, and Orders did not issue until December 15, 2015, another two months after the October 13, 2015, hearing.

bankruptcy court adjudicated the pertinent issue as a motion to dismiss the bankruptcy case and "any error by the bankruptcy court in hearing this matter as a contested motion was harmless," citing *Barner v. Saxon Mortg. Servs., Inc. (In re Barner)*, 597 F.3d 651, 654 (5th Cir. 2010) (per curiam) (debtor's substantial rights were unaffected by creditor seeking relief by motion rather than by adversary proceeding due to a full hearing on the merits before the bankruptcy court and the ability to litigate all questions of law there and before the district court; any error was harmless.)); *see also* Fed. R. Bankr. P. 9005 (the "Harmless Error" rule).

Appellant's claims that they had "no notice" of the proceeding, of the issues the Bankruptcy Court intended to probe, of a lack of discovery, and of no time to review exhibits or depose witnesses are without basis.

Accordingly, this contention is without merit.

F.    **Whether the Bankruptcy Court erred in declining to allow a jury to determine fact issues.**

Here, Appellant appears to argue on the one hand that the Bankruptcy Court should have conducted a jury trial on the matters considered during the Show Cause hearings and, on the other hand, contends that the Bankruptcy Court was without power to conduct a jury trial on these "non-core" matters. Appellant's Brief at 15-16.

Appellee contends that Appellant – represented at the Show Cause hearing by the same counsel representing this appeal – "never objected to the bench trial, and never moved for a new trial with a jury." Appellee's Brief at 29. Appellant replies that it did object to the bench trial, and quoted a transcript excerpt in support thereof. Appellant's Reply at 3-5 (quoting excerpt from the August 25, 2015, hearing). However, the subject of the transcript excerpt was

Appellant's objections to exhibits being offered at the hearings and Appellant's claimed lack of opportunity to conduct discovery. *Id.* It does not address either (1) a motion for a jury trial or (2) an objection to carrying out a bench trial. In fact, counsel for Appellant argued at that hearing, "Well, you know what, if we're here to find that out, how about I have the opportunity to conduct some discovery, or even present my own witnesses, instead of being charged by ambush by this lawyer." Trustee's Supplemental Filing (Doc. No. 8) (transcript of August 25, 2015, hearing) at 11:16-19; Appellant's Reply at 5. As the Court has described in the preceding section, the Bankruptcy Court continued the Show Cause hearing twice to permit Appellant to conduct discovery, including depositions.

There is no evidence that Appellant either objected to a non-jury proceeding or requested a jury trial before the Bankruptcy Court. Accordingly, Appellant raises this issue for the first time on appeal and the Court therefore need not consider it. *Stewart Glass & Mirror, Inc.*, 200 F.3d at 316-17.

**G.      Whether the Bankruptcy Court erred in determining Freeman is a debt relief agency.**

Appellant next contends that Freeman is not a Debt Relief Agency, as defined under 11 U.S.C. § 101(4A), and that the Bankruptcy Court erred in finding that it is. Appellant's Brief at 16-17. Appellant quotes the Fifth Circuit' partial holding in *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743 (5th Cir. 2008) that,

> For the reasons stated, we agree with the Eighth Circuit's unanimous opinion in *Milavetz* on this issue and we hold that the district court properly concluded that, under the plain language of the section 101(12A) definition, an attorney providing, "in return for the payment of money or other valuable consideration,"

"bankruptcy assistance," as defined in section 101(4A), to an "assisted person," as defined in section 101(3), is a "debt relief agency" for purposes of the BAPCPA.[13]

*Hersh*, 663 F.3d at 752. Appellant contends that it neither filed Ms. Herrera's bankruptcy nor received compensation for the filing. Appellant's Brief at 17.

In the first place, the entire issue whether Freeman is a debt relief agency under Title 11, as amended by BAPCPA, is irrelevant to Appellant's appeal of sanctions for violation of the automatic stay. Section 101, as amended, on which Appellant relies, simply provides broad definitions of terms. The actual sections of the Bankruptcy Code applying to debt relief agencies are 11 U.S.C. §§ 526 ("Restrictions on debt relief agencies"), 527 ("Disclosures") and 528 ("Requirements for debt relief agencies"). The Bankruptcy Court found that "Freeman and Ms. Bascus are both 'Debt Relief Agencies' as defined in Bankruptcy Code § 101(12A)," Conclusion of Law No. 7 (Doc. No. 5) at 000343), and that "Freeman failed to provide Ms. Herrera with any of the notices required under Bankruptcy Code §§ 526, 527 and 528. Freeman failed to inform Ms. Herrera of the risks of becoming a debtor in bankruptcy," *id*. (Conclusion of Law No. 8). However, none of the Bankruptcy Court's sanctions were founded in any of these sections. Instead, the sanctions were premised on 11 U.S.C. § 105 (injunctive relief and internal controls) and 11 U.S.C. §§ 105(a) and 362(k)(1) (monetary fines). Accordingly, the Bankruptcy Court's finding that Freeman and Ms. Bascus are debt relief agencies is irrelevant to Appellant's appeal. Moreover, Appellant has not argued the issue's relevance at all.

Second, even if the issue were relevant, the Bankruptcy Court properly found that Freeman and Ms. Bascus are debt relief agencies under the Bankruptcy Code. The Supreme

---

[13] The Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23 (2005). BAPCPA amended numerous sections of Title 11.

Court has held that "attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies within the meaning of the BAPCPA." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 (2010); *see also Hersh*, 553 F.3d at 748 ("'Debt relief agency' is defined in the BAPCPA as 'any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110 . . . .' 11 U.S.C. § 101(12A)"). It is undisputed that Ms. Herrera is an "assisted person" under 11 U.S.C. § 101(3). "Bankruptcy assistance" is defined as:

> . . . any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

11 U.S.C. § 101(4A).

Here, Freeman provided advice and counsel to Ms. Herrera that she should file a petition for Chapter 13 bankruptcy. Further, Freeman arranged for Ms. Bascus, a bankruptcy petition preparer whose services Freeman had recommended to other clients in Ms. Herrera's position previously, to prepare the Chapter 13 petition. Ms. Herrera agreed to pay Freeman $4500, and in fact made an initial payment of $1500 on May 5, 2015, before the bankruptcy petition was prepared. That Freeman and Ms. Bascus "debt relief agencies" under the BAPCPA.

Appellant argues, nonetheless, that Freeman's contract with Ms. Herrera specifically excluded performing bankruptcy work and that Freeman's performance under the contract was limited to mortgage loan modification. Those may have been the terms of the contract. However, the evidence presented to the Bankruptcy Court, and preserved in the record, is that

Freeman explicitly advised Ms. Herrera to file bankruptcy and arranged for a bankruptcy petition preparer to assist her. The Bankruptcy Court made a specific Finding of Fact on this point:

> 58.     After a brief period of time, Freeman told Ms. Herrera and Ms. Green that the loan modification would not stop the foreclosure. Freeman did not advise Ms. Herrera or Ms. Green to seek separate counsel regarding whether bankruptcy might be an appropriate course. Instead, Freeman advised the clients to file bankruptcy. Freeman then recommended that the clients use a bankruptcy petition preparer to prepare the filing.

Finding of Fact No. 58 (Doc. No. 5 at 000340). Appellant has not contested this Finding of Fact and the Bankruptcy Court's finding is not clearly erroneous on this record. *In re Dennis*, 330 F.3d at 701.

It is clear that Freeman's collected fee included those services. That *actual* performance, as opposed to the terms of the contract, was sufficient to earn the designation of "debt relief agency." *Hersh*, 553 F.3d at 752 ("we hold that . . . under the plain language of the section 101(12A) definition, an attorney providing, 'in return for the payment of money or other valuable consideration,' 'bankruptcy assistance,' as defined in section 101(4A), to an 'assisted person,' as defined in section 101(3), is a 'debt relief agency' for purposes of the BAPCPA."); *Milavetz, Gallop & Milavetz, P.A.*, 559 U.S. at 239.

This contention is without merit.

**H.     Whether the Bankruptcy Court erred by making Bankruptcy Preparers agents of Freeman.**

In this contention, Appellant asserts that Freeman never made Ms. Bascus Freeman's agent or partner and that Freeman cannot be held liable for Ms. Bascus's work in preparing bankruptcy petitions. Appellant's Brief at 17-21.

In two of its Findings of Fact, the Bankruptcy Court found that Freeman had used Ms.

Bascus as its agent for preparing Chapter 13 bankruptcy petitions:

> Freeman, through Jeff Lalo, has used Natasha Bascus as its agent to prepare over
> 200 Chapter 13 bankruptcy petitions for Freeman clients across the United States.
> None of the cases prepared by Ms. Bascus through June 30, 2015 have ever
> contained any schedules. The vast majority of these cases were dismissed for
> failure to file information, including schedules.

Finding of Fact No. 62 (Doc. No. 5 at 000341).

> After the Injunction, Freeman, by and through Mr. Lalo, used Ms. Bascus as its
> agent to prepare 15 cases in the Southern District of Georgia. These petitions
> were prepared for Freeman clients.

Finding of Fact No. 68 (Doc. No. 5 at 000342). The Bankruptcy Court went on to find that Ms.

Bascus acted as Freeman's agent in its Conclusions of Law:

> Natasha Bascus provided bankruptcy assistance to Ms. Herrera. As to Ms.
> Herrera, Ms. Bascus acted as Freeman's agent. This agency relationship began
> when Jeff Lalo, the office manager and person in control of Freeman, engaged
> Ms. Bascus to prepare a bankruptcy petition for Ms. Herrera.

Conclusion of Law No. 5 (Doc. No. 5 at 000343). The Bankruptcy Court also referred to

Freeman and its "agents" in its Orders on injunctive relief and internal controls (Orders Nos. 1

and 3) (Doc. No. 5 at 000345). However, the Bankruptcy Court also distinguished "bankruptcy

petition preparer[s]" from "agents" in its Order No. 2 (enjoining Freeman from "working in

concert with any bankruptcy petition preparer" or "contacting any bankruptcy petition preparer

on behalf of any of its loan modification clients" in the Eastern District of Texas). *Id*.

On this framework, Appellant claims that the Bankruptcy Court erroneously found Ms.

Bascus to be Freeman's agent. Specifically, Appellant asserts that "Judge Rhoades makes a leap

of faith and sanctions Freeman for the Bankruptcy filings of Bascus." *Id*. at 20. To that end,

Appellant offers certain case quotations as to the laws of agency and partnership. It follows this with an argument that:

> Natasha Bascus prepared one of Herrera's bankruptcy petitions. Bascus, was not an agent of Freeman, she was paid directly by Herrara the client. She doesn't share the filing with Freeman, she doesn't notify Freeman when a petition has been filed, she does not get paid by Freeman, Freeman is not involved at all in the Bankruptcy Filings.

Appellant's Brief at 18 (reproduced as in original). Appellant further argues that there was no contract between Freeman and Ms. Bascus, and therefore no privity of contract by which to impute liability on Freeman for Ms. Bascus's work as a bankruptcy petition preparer in Ms. Herrera's case. *Id*. at 19.

Appellant proceeds on an unsound premise. It contends that the Chief Bankruptcy Judge "sanction[ed] Freeman for the Bankruptcy filings of Bascus." Appellant's Brief at 20. But, it is clear from the Bankruptcy Court's Findings of Fact, Conclusions of Law, and Orders, that Appellant's contention is mistaken. The Bankruptcy Court sanctioned Freeman for violation of the bankruptcy automatic stay and for abusing the bankruptcy process by advising its clients, including Ms. Herrera, to file bankruptcy without any intention of following through. The Bankruptcy Court sanctioned Ms. Bascus separately for her contempt of court in failing to appear at the October 13, 2015, hearing, and for her actions as a bankruptcy petition preparer. In so doing, the Bankruptcy Court did not impute Ms. Bascus's actions to Freeman, and there was no necessity for it to do so. Moreover, even if Ms. Bascus was not in an agency relationship to Freeman, as Appellant contends, the Bankruptcy Court made it clear that its injunctive relief applied not just to "agents" but to "employees, representatives, affiliates," and other relationships to Freeman.

In other words, the Bankruptcy Court's sanctions against Freeman were properly invoked and whether Ms. Bascus was an "agent" of Freeman is moot.

**I.      Whether the Bankruptcy Court erred by failing to have a pretrial conference.**

Appellant next returns to its contention that the Bankruptcy Court erred by failing to follow the Federal Rules of Civil Procedure.   In this instance, it asserts that Fed. R. Civ. P. 16, made applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7016, required that the Bankruptcy Court conduct a pretrial conference.   In that light, Appellant contends that the only issue it thought pending when the Show Cause hearing convened was whether Freeman had taken a payment after Ms. Herrera had filed bankruptcy.   Appellant further contends that it had no chance to conduct discovery and no opportunity to either dismiss the case or negotiate a settlement.   Appellant's Brief at 21.

The Court has already found that the Bankruptcy Court's Show Cause hearings did not constitute a bankruptcy adversary proceeding.   *See* Section III.E., above.   Further, the Court has also found, even if the proceeding might have been more appropriate as an adversary action, the Appellant had more than sufficient notice regarding the subject matter of the Show Cause process and ample time for discovery.[14]   Therefore, proceeding as a contested matter was at most harmless error.   *In re Krueger*, 812 F.3d at 369; Fed. R. Bankr. P. 9005.   Accordingly, for the same reasons stated in Section III.E., Appellant's instant contention is without merit.

**J.      Whether the Bankruptcy Court violated Freeman's First Amendment Rights.**

---

[14] Moreover, the issues to be investigated during the Show Cause hearings were fully spelled out in the Order to Appear and Show Cause, quoted above, and not limited to whether Freeman had taken a payment after Ms. Herrera had filed bankruptcy.

Here, Appellant claims that 11 U.S.C. § 526(a)(4) violates its constitutional rights due to its regulation of attorney-client speech. Appellant has submitted a detailed survey of cases addressing the constitutionality of the statute and the apparent need to construe it "narrowly." Appellant's Brief at 22-26. However, Appellant has not provided any substantive argument as to how its First Amendment rights were allegedly violated under § 526 in the instant case. *Id.*

In fact, although the Bankruptcy Court found that some of the Appellant's collective conduct violated §§ 526, 527 and 528 (*see* Conclusion of Law No. 8: "Freeman failed to provide Ms. Herrera with any of the notices required under Bankruptcy Code §§ 526, 527 and 528."), none of the sanctions the Bankruptcy Court imposed were based on § 526. *See* Orders Nos. 1 – 13 (Doc. No. 5 at 000345 – 000347) (all sanctions imposed under 11 U.S.C. §§ 105, 110 and 362).

Rather than imposing sanctions under 11 U.S.C. § 526, the Bankruptcy Court explicitly referred consideration of possible violations of that statute to the United States Trustee:

> It is **FURTHER ORDERED** that this matter is **REFERRED** to the United States Trustee for further investigation, if necessary, and any appropriate action that may be brought against Freeman and Freeman's employees for their violations of 11 U.S.C. §§ 526, 527 and 528.

*See* Doc. No. 5 at 000348. Accordingly, Appellant's premise is without foundation and this contention is without merit.

### K. Whether the [Bankruptcy] Court erred by the imposition of fines under [11 U.S.C. §] 526 reserved for intentional violations without proving intent.

Finally, Appellant argues that imposing fines against Freeman under 11 U.S.C. § 526 was improper, inasmuch as "[Freeman] did not practice in the Bankruptcy Court[;]" that it had "no

notice" of the second bankruptcy Ms. Herrera filed; that it did not take the payment from Ms. Herrera's account as asserted by the United States Trustee; that "[t]here is no case law where a law firm that practices strictly mortgage modification, essentially banking work, has ever been deemed a debt relief agency[;]" and that Freeman's contract with Ms. Herrera "specifically starts [*sic*] that they don't do bankruptcy work." Appellant's Brief at 26-27.

As the Court has already observed, the Bankruptcy Court did not impose sanctions on Freeman pursuant to 11 U.S.C. § 526. Sanctions were imposed for violations of the automatic stay pursuant to 11 U.S.C. §§ 105(a) and 362(k)(1), not for violations of the debt relief agency provisions of the Bankruptcy Code. On that basis, Appellant's final contention is without merit.

To the extent that Appellant repeats its contentions about not being a bankruptcy practice, that it had no notice of the second bankruptcy and that it took no payment from Ms. Herrera's account, the Court has also ruled on those arguments, finding them likewise without merit.

## IV. CONCLUSION

In view of the above discussion, the Bankruptcy Court's decision (Findings of Fact, Conclusions of Law, and Orders, Doc. No. 5 at 00332 – 00348) is **AFFIRMED** and the instant appeal is **DISMISSED**.

It is **SO ORDERED**.

**SIGNED this 22nd day of August, 2016.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE